IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RODERICK WILLIAMS**                                                                      **PETITIONER**
**ADC #111674**

CASE NO. 4:20-CV-83-BRW-BD

**WENDY KELLEY, Secretary,**
**Arkansas Department of Correction**                                              **RESPONDENT**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to Judge Billy Roy Williams. Any party to this suit may file objections if they disagree with the findings or conclusions set out in the Recommendation. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record.

**II.    Background:**

**A. Trial and Direct Appeal Proceedings**

In September 2008, petitioner Roderick Williams was tried before a Desha County, Arkansas jury and was convicted of capital murder, kidnapping, first-degree domestic battering, endangering the welfare of a minor, and being a felon in possession

of a firearm. *Williams v. State*, 2010 Ark. 89 at 1 (*Williams I*). On direct appeal, Mr. Williams argued that the trial court erred by refusing to grant a mistrial after a witness testified that Mr. Williams had previously been convicted of terroristic threatening. *Id.* at 2-3. The Arkansas Supreme Court agreed and reversed and remanded for a new trial. *Id.*

Two years later, Mr. Williams was retried, and a jury convicted him of capital murder, first-degree domestic battering, endangering the welfare of a minor, and possession of a firearm by a felon.[1] (Doc. No. 8-5 at 182-85) The jury sentenced Mr. Williams to a term of life without parole, plus 82 years. (Doc. No. 8-5 at 1372-81)

The Arkansas Supreme Court described the evidence presented at trial as follows:

> Appellant [Roderick Williams] had a turbulent relationship with Kerman Harris, who testified that appellant was the father of her nine-month-old daughter. The couple ended their relationship, and Harris filed an order of protection against him. Nevertheless, on the afternoon of April 26, 2007, appellant attempted to contact Harris at her cousin's residence in McGehee when appellant approached the home and demanded entry. Harris called 911 for police assistance, but appellant left the premises before the police arrived.
>
> At approximately 10:30 that evening, appellant went to Harris's home where she lived with her baby and her parents. Harris's mother, Clara Cobb, came onto the front porch to speak to appellant while Harris was on the phone inside the home. After her phone conversation, Harris, while holding the baby, went toward the porch to see who was there. At that time, she saw appellant loading a shotgun while talking to Cobb. Cobb threw up her hands, and appellant shot her in the stomach. Harris stood within a foot of her mother behind a screen door. Still armed, appellant took Harris and her baby, dragging Harris by her hair to a car where his uncle, Alonzo Williams, was waiting. Appellant drove away with Harris and the baby. During the car ride, appellant hit Harris, and she and Williams attempted to shield the baby from appellant's blows. Appellant pulled over and left his uncle and the baby on the side of the road. Appellant then forced Harris to remain with him. After getting the car stuck, appellant and Harris caught a ride to a trailer where they stayed until a SWAT team apprehended him the following day. As a result

---

[1] Mr. Williams was acquitted of kidnapping. (Doc. No. 8-5 at 1381)

> of appellant's beating, Harris suffered a broken arm and wrist and injuries to her face.
>
> Police discovered three unspent shotgun shells on the porch near Cobb's body. A medical examiner performed an autopsy and stated that Cobb suffered a gunshot wound to the upper part of her stomach. The examiner found shotgun shell pellets and a shot cup inside Cobb's body. Based upon these findings, the examiner confirmed that Cobb was shot at close range. Police officers found the broken shotgun and a spent shell near a bridge in close proximity to the Cobb house where appellant stopped to leave his uncle and baby.

*Williams v. State*, 2011 Ark. 432, 1–3 (2011) (*Williams II*).

Mr. Williams appealed his convictions to the Arkansas Supreme Court, claiming that the trial court erred by denying his motion for directed verdict on capital murder, by denying his directed verdict motion for child endangerment, and by failing to declare a mistrial after Ms. Harris mentioned Mr. Williams's first trial during her testimony. *Williams II*, at 3.

The Arkansas Supreme Court affirmed. It held that substantial evidence supported Mr. Williams's convictions for capital murder with premeditation and deliberation and for child endangerment. *Id*. at 6-7. It also held that the trial court did not err in denying Mr. Williams's motion for mistrial. *Id*. at 10.

### B. Post-conviction Proceedings

Mr. Williams filed a timely petition for post-conviction relief under Arkansas Rule of Criminal Procedure 37.1. He claimed that his trial counsel was constitutionally ineffective for failing to request a jury admonition after Ms. Harris referred to the first trial and for failing to impeach Ms. Harris with the "false" testimony she gave at the first trial. *Williams v. State*, 2019 Ark. 129 at 3 (*Williams III*). (Doc. No. 8-8 at 68-69) He also

3

claimed that his appellate counsel was ineffective for failing to challenge various adverse evidentiary rulings by the circuit court that limited his trial counsel's ability to cross-examine Ms. Harris about personal issues with another woman with whom he also had a child. *Id*. (Doc. No. 8-8 at 69-70)

The trial court denied Mr. Williams's petition without a hearing. *Id*. (Doc. No. 8-8 at 98) In a written order, it found that defense counsel had made reasonable tactical decisions; that Mr. Williams had effective assistance of counsel during his trial; and that he was afforded due process. (Doc. No. 8-8 at 98)

Mr. Williams appealed to the Arkansas Supreme Court. *Id*. (Doc. No. 8-9) He raised the same three ineffective-assistance-of-counsel claims that he had raised in his Rule 37 petition. (Doc. No. 8-9 at 4-9) Additionally, he claimed that his conviction violated due process because there was insufficient evidence of premeditation and deliberation to support his capital-murder conviction. (Doc. No. 8-9 at 9-11)

The Arkansas Supreme Court applied the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984) to assess Mr. Williams's ineffective-assistance-of-counsel claims. It found that trial counsel's decision not to request an admonition was a reasonable trial strategy designed to avoid calling further attention to the remark rather than ineffective assistance of counsel. *Williams III*. at 6. It also found counsel's decision not to question Ms. Harris about what Mr. Williams characterizes as perjury was also a reasonable trial tactic. Questioning along that line could have led to testimony about the previous terroristic-threatening charges against Mr. Williams that had been dismissed. *Id*. Finally, the court found that Mr. Williams had failed to meet his burden of showing that

4

appellate counsel could have made showing of error by the trial court. *Id*. at 7. The court refused to address the due process claim because Mr. Williams had not raised that issue with the trial court, and it was not cognizable in a Rule 37 petition. *Id*. at 8.

### C. Federal Habeas Petition

Mr. Williams raises four claims in his timely federal habeas petition. First, he claims that there was insufficient evidence to support his conviction for capital murder. (Doc. No. 1 at 5) Second, he claims that his trial counsel was ineffective for failing to ask for a jury admonition after Ms. Harris's remark about his first trial; and third, he faults his trial counsel for failing to impeach Ms. Harris on her previous trial testimony, which he characterizes as "false." (Doc. No. 1 at 7-9) Finally, he claims that a Dumas police officer illegally arrested him outside of his jurisdiction in violation of Arkansas law. (Doc. No. 1 at 10)

Director Payne responds that Mr. Williams's insufficient evidence and ineffective-assistance-of-counsel claims were reasonably adjudicated on the merits in state court, noting that the state-court decisions are entitled to deference. (Doc. No. 8 at 7-18) Further, he contends that Mr. Williams's claim that he was illegally arrested fails because the claim is not cognizable in a habeas petition. (Doc. No. 8 at 18-19)

In his reply, Mr. Williams argues: that the State failed to present sufficient evidence of premeditation; that he was prejudiced by counsel's failure to impeach Ms. Harris; and that his arrest violated the jurisdictional limits set out in Arkansas Code Annotated § 16-81-106. (Doc. Nos. 11 and 12)

**III.    Discussion:**

    **A.  Standard**

A federal habeas petitioner challenging a matter adjudicated by a state court on the merits must show that the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To decide whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact, this Court must "train its attention on the particular reasons—both legal and factual—why state courts rejected the state prisoner's federal claims." *Wilson v. Sellers*, __U.S. __, __, 138 S.Ct. 1188, 1191-92 (2018) (quoting *Hittson v. Chatman,* 576 U.S. __, __, 135 S.Ct. 2126, 2126 (2015)). The Court must also give appropriate deference to the state court's decision. *Id*. (citing *Harrington v. Richter,* 562 U.S. 86, 101–02 (2011)).

For purposes of the statute, "contrary to" and "unreasonable application" have "independent meaning." See *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The "contrary to" clause "suggests that the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id*. (defining "contrary" as "diametrically different," "opposite in character or nature," or "mutually opposed"). "An 'unreasonable application' of Supreme Court precedent occurs when a state court correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context."

*Munt v. Grandlienard*, 829 F.3d 610, 614 (8th Cir. 2016), *cert. denied,* 137 S. Ct. 821 (2017) (citing *Williams*, 529 U.S. at 407).

### B. Sufficiency of the Evidence

In this habeas petition, Mr. Williams claims that there was insufficient evidence to support his capital-murder conviction. (Doc. Nos. 1 at 5, 11 at 1-2) He raised a claim of insufficiency-of-evidence on direct appeal when he challenged the trial court's denial of his motion for a directed verdict. *Williams II* at 3-6. The Arkansas Supreme Court considered the evidence in a light most favorable to the State to determine whether there was substantial evidence to support the jury's verdict. *Id*. at 3. This standard is not contrary to, or an unreasonable application of, Supreme Court precedent. See *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt) (other citation omitted).

Under Arkansas law, a defendant commits capital murder if, with the premeditated and deliberate purpose of causing the death of another, he causes the death of any person. ARK. CODE ANN. § 5-10-101(a)(4). Further, as the Arkansas Supreme Court has observed, under Arkansas law, premeditation can be formed in an instant; and intent can be inferred from the circumstances of the crime. *Williams II* (citing *Pearcy v. State*, 2010 Ark. 454 at 6-7). Premeditation and deliberation can also be inferred from the type and character of the weapon used; the way the weapon was used; the nature, extent, and

location of a victim's wounds; and the accused's conduct. *Id.* (citing *Robinson v. State*, 363 Ark. 432 (2005)).

Mr. Williams admits that he shot and killed the victim. He argues, however, that the State did not produce enough evidence to show that he acted with premeditation and deliberation. *Williams II*, 2011 Ark. at 4, (Doc. Nos. 1 at 5, 11 at 1-2) Specifically, he argues that the state did not introduce evidence of "motive or intent to kill." (Doc. No. 1 at 5)

In his reply, Mr. Williams claims that Dr. Daniel Konzleman, Associate Medical Examiner, who testified that the shot had been fired at "close range," previously testified that the shot was fired at a range of one to eight feet. (Doc. No. 11 at 1)

In affirming the trial court's ruling that sufficient evidence supported the capital murder conviction, the Arkansas Supreme Court relied on both Ms. Harris's eyewitness testimony and Dr. Konzleman's testimony to establish premeditation. The court wrote:

> Harris testified that she had filed an order of protection against appellant for harassing her; however, appellant appeared at her cousin's house and left after she called 911. Later that night, Harris heard her mother talking to someone on the porch, and when she got off the phone, she went to the door and saw appellant loading a shotgun. Harris stated that she saw her mother throw up her hands as if to say, "I give up," and she witnessed appellant shoot her mother with the shotgun at close range. According to Harris, she stood near her mother on the inside of a screen door, about one foot away, while she held her child in her arms.
>
> Dr. Daniel J. Konzleman, an associate medical examiner at the Arkansas State Crime Laboratory, testified about the nature, extent, and location of Cobb's wounds. The doctor testified that he performed the autopsy on the victim and discovered that she suffered a shotgun wound to her abdomen. Dr. Konzleman further testified that a shot cup will enter a wound if the shot is fired within approximately eight feet. He stated that he recovered small birdshot-type pellets and a shot cup from the victim's body. Based upon his

>findings, Dr. Konzleman estimated that the shooting could have taken place within a range of one to two feet.

*Williams II*, at 5-6.

The Court has reviewed the evidence presented at trial and finds that the Arkansas Supreme Court's determination of the facts was not unreasonable. The Arkansas Court acknowledged Mr. Williams's testimony that the gun "went off" when he grabbed it from Ms. Cobb and that the shooting was an accident. But as the Arkansas Court explained, the jury resolved the inconsistencies between testimony it heard from Mr. Williams and Ms. Harris, and "the jury believed Harris and found appellant acted with premeditation and deliberation by taking the shotgun to the house, walking to the porch, loading the gun, and firing at the victim after she threw her hands in surrender." *Id*. The Arkansas Supreme Court held that the jury found sufficient evidence to compel a conclusion, and its decision was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. at 4.

In his reply to the response, Mr. Williams argues that his counsel failed to impeach Dr. Konzleman on key points, and that as a result, his testimony misled the jury. (Doc. No. 11 at 1) In an attempt to bring this claim under the umbrella of a due process claim, Mr. Williams asserts that his counsel's failure to impeach Dr. Konzleman violated his due process rights. Mr. Williams did not properly raise this point, however, as either an ineffective-assistance-of-counsel claim or a due process claim in his habeas petition or with the state courts. See *Williams II* at 6-8; *Williams III* at 3, 8. Accordingly, the Court will not address the novel claim here.

The Arkansas Supreme Court appropriately viewed the evidence in a light most favorable to the State. It held that a reasonable jury could have found the essential elements of capital murder beyond a reasonable doubt from the evidence presented at trial. Accordingly, Mr. Williams's challenge to the sufficiency of the evidence fails.

## C. Ineffective Assistance of Counsel

To prove his ineffective-assistance claims, Mr. Williams must show that his counsel was deficient and that he suffered prejudice as a result of this deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). In other words, Mr. Williams must show that his counsel fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id*. at 688, 694.

Mr. Williams contends that his trial counsel was ineffective for failing to ask for a jury admonition when, during cross-examination, Ms. Harris referred to the earlier trial. As the Arkansas Supreme Court pointed out, asking for an admonition might well have been counter-productive, because an instruction would have drawn attention to the fact that this was a second trial. The court concluded that counsel's decision was a tactical decision that fell within the wide range of "reasonable professional judgment." *Williams III*, 2019 Ark. at 5-6; see also *Strickland*, 466 U.S. at 689 (holding counsel's "strategic choices" after a thorough investigation are "virtually unchallengeable").

Mr. Williams also complains that his trial counsel was ineffective for failing to impeach Ms. Harris with her previous testimony. Mr. Williams raised this claim in his Rule 37 petition and on appeal of the denial of the petition. The Arkansas Court found

that trial counsel's decision not to question Ms. Harris about the statement she made in the first trial that led to a mistrial was another "professionally reasonable tactic" given that reference to the remark would have made the jury aware of terroristic-threatening charges against Williams that were dismissed. *Id*. at 6. The court's decision was not an unreasonable determination of the facts or an unreasonable application of federal law.

### D. Illegal Arrest

Finally, Mr. Williams claims he was illegally arrested by a Dumas police officer outside of Dumas city limits, in violation of Arkansas law. This claim cannot be heard in this federal habeas case because it asserts a violation of state law. A federal habeas petition is limited to challenges to the application of federal law. 28 U.S.C. § 2254(d); see also *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determination on state-law questions").

## IV.  **Certificate of Appealability:**

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Williams has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c) (1)-(2). In this case, Mr. Williams has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

## V.     Conclusion:

The Arkansas Supreme Court's decisions denying Mr. Williams relief were neither unreasonable applications of federal law nor unreasonable determinations of facts in the light of the evidence presented at trial. The Court recommends that Mr. Williams's petition for writ of habeas corpus (Doc. No. 1) be DISMISSED, with prejudice.

DATED this 11th day of May, 2020.

_____
UNITED STATES MAGISTRATE JUDGE